UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SHAKEEL ABDUL-RASHEED, on behalf
of himself and others similarly situated,

      Plaintiff,

v.                                      Case No.  8:13-cv-879-T-24 MAP

KABLELINK COMMUNICATIONS, LLC
and KABLELINK COMMUNICATIONS
OF NORTH CAROLINA, LLC,

      Defendants.
_____/

**ORDER**

This cause comes before the Court on two motions: (1) Plaintiff's Motion for Conditional Certification and Facilitation of Court-Authorized Notice (Doc. No. 21), which Defendants oppose (Doc. No. 32); and (2) Plaintiff's Motion for Miscellaneous Relief Pursuant to § 215(a)(3) and for Corrective Notice (Doc. No. 34), which Defendants oppose (Doc. No. 35).

**I.  Background**

On April 5, 2013, Plaintiff Shakeel Abdul-Rasheed filed suit against Defendants KableLink Communications, LLC ("KC-FL") and KableLink Communications of North Carolina, LLC ("KC-NC").  In his complaint (Doc. No. 1), Plaintiff alleges the following: Defendants KC-FL and KC-NC are joint employers that hired Plaintiff in December of 2011 to work as a cable installer at Defendants' Spring Hill location.  (¶ 54).  Plaintiff's primary duties included the installation and repair of telecommunications and cable equipment and services for Defendants' customers, including Bright House Networks.  (¶ 56).  Plaintiff contends that Defendants mis-classified him and other cable installers as independent contractors, and as a

result, violated the Fair Labor Standards Act's ("FLSA") minimum wage and overtime provisions. (¶ 6, 112, 130).

According to Defendants, KC-FL provides services to Bright House Networks in six Florida locations and has engaged over 600 cable installers in the last three years. (Doc. No. 32-1, ¶ 3-4). Further, Defendants contend that KC-NC provides services to Time Warner in Raleigh, North Carolina and has engaged over 150 cable installers in the last three years. (Doc. No. 32-1, ¶ 5-7).

**II.  Motion for Conditional Certification and Court-Authorized Notice**

Pursuant to 29 U.S.C. § 216(b), Plaintiff moves the Court to conditionally certify a putative class of cable installers[1] that: (1) performed work for Defendants in Florida and/or North Carolina within the last three years, (2) were classified as independent contractors, and (3) were not paid proper minimum wages and/or overtime wages. Plaintiff seeks conditional certification so the cable installers can pursue the FLSA claims via a collection action. Additionally, Plaintiff is requesting that the Court authorize the mailing of notice of this lawsuit and a consent to join form to the proposed class members.

Defendant opposes the motion, arguing that the proposed class of cable installers is not similarly situated to Plaintiff. However, if the Court concludes that the proposed class is similarly situated, then Defendant asks the Court to limit the class to cable installers that performed work for Defendants in Florida during the relevant time period. Accordingly, the Court will address both arguments.

---

[1] The label, "cable installers," includes all "Installers," "Cable Installers," "Cable Installation Contractors," and "Field Technicians."

### A. Framework for Analyzing Motions for Conditional Certification and Notice

Pursuant to 29 U.S.C. § 216(b), an action to recover for violations of the FLSA may be brought by one or more employees on their own behalf and on behalf of other similarly situated employees. If an employee-plaintiff wants to maintain an opt-in collective action against his employer for FLSA violations, the plaintiff must demonstrate that he is similarly situated to the proposed members of the collective class and that there is a desire by them to join the lawsuit. See Hipp v. Liberty National Life Insurance Company, See 252 F.3d 1208, 1217 (11th Cir. 2001); Dybach v. State of Florida Dept. of Corrections, 942 F.2d 1562, 1567-68 (11th Cir. 1991). An employee interested in joining, or opting-in to, the lawsuit must file a written consent in order to become a party to the suit. See 29 U.S.C. § 216(b).

The Eleventh Circuit has suggested a two-tiered approach for district courts to use when determining whether an opt-in class should be certified:

> The first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision—usually based only on the pleadings and any affidavits which have been submitted—whether notice of the action should be given to potential class members.
>
> Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery.
>
> The second determination is typically precipitated by a motion for "decertification" by the defendant[,] usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not

>	similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives—i.e. the original plaintiffs—proceed to trial on their individual claims.

Hipp, 252 F.3d at 1218 (quoting Mooney v. Aramco Services Co., 54 F.3d 1207, 1213-14 (5th Cir. 1995)).[2]

### B.  Similarly Situated Requirement

In evaluating whether conditional certification is appropriate, this Court considers whether Plaintiff has shown that the purported class members are similarly situated to him with respect to their job requirements and with regard to their pay provisions.  See Dybach, 942 F.2d at 1567-68.  In determining whether Plaintiff and the purported class members are similarly situated with respect to their job requirements, Plaintiff only needs to show that their positions are similar; Plaintiff is not required to show that their positions are identical.  See Grayson v. K Mart Corp., 79 F.3d 1086, 1096 (11th Cir. 1996)(citations omitted).  Furthermore, the similarly situated requirement "is more elastic and less stringent than the requirements found in Rule 20 (joinder) and Rule 42 (severance)." Id. at 1095.

In support of his argument that all cable installers in Florida and North Carolina are similarly situated to him, Plaintiff has filed his own declaration, as well as declarations from five other cable installers that outline the work they performed for Defendants in Florida.  (Doc. No. 22-1, 22-2, 21-6, 21-8, 23-1, 29-1).  A review of these declarations shows that these cable installers performed work for Defendants in Florida that was similar to the work performed by Plaintiff.  For example, the cable installers allege that: (1) they were scheduled to work five to

---

[2] Mooney was overruled in part on other grounds by Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003).

4

six days per week; (2) they were required to report to work at a specific time each morning; (3) they could not make their own schedules, and their schedules were completely dependent upon the job assignments given to them by Defendants; (4) they were paid "piece rates" and subject to non-negotiable "charge backs;" (5) they could not refuse a job without fear of negative consequences; (6) either Defendants provided, or they had to buy directly from Defendants, all of their tools; and (7) they regularly worked more than forty hours per week.

The Court notes that Defendants argue that the level of control over cable installers varies between the six different Florida locations, but Defendants do not provide any factual detail to support this allegation. Based on the Court's review of the declarations, the Court concludes, at this early stage of the proceedings, that Plaintiff has made a sufficient showing that the Florida cable installers are similarly situated to him.

However, the only evidence regarding cable installers in North Carolina is the declaration of Brenden VonderVor, who "mainly worked at Defendants' Crystal River, Florida location," but "also performed work for Defendants in North Carolina within the last three years." (Doc. No. 22-2, ¶ 4-5). It is unclear how long VonderVor worked for Defendants in North Carolina, and he is the only cable installer that has filed a declaration regarding the work performed by cable installers in North Carolina. This Court is unwilling to expand the class of cable installers to include those in North Carolina without more evidence that such installers are similarly situated to Plaintiff. Therefore, the Court will grant Plaintiff's motion to conditionally certify a class of cable installers, but the Court will limit the class to cable installers that performed work for Defendants in Florida within the last three years.

**C. Form of Proposed Notice to Class**

Defendants raise several objections to the proposed Notice. Accordingly, the Court will address each objection.

**1. Class Period**

In their proposed Court-authorized Notice, Plaintiff has used a three-year limitations period. Defendants contend that the relevant time period for class claims is two years, because a three-year period is only applicable if the FLSA violation is willful. 29 U.S.C. § 255(a). The Court rejects this argument.

Plaintiff has alleged in his complaint that Defendants willfully violated the FLSA. (Doc. No. 1, ¶ 117, 135). At this early stage of the proceedings, the Court concludes that Plaintiff's allegation is sufficient to support his request for a three-year period in the Court-authorized Notice. See Ohsann v. L.V. Stabler Hospital, 2008 WL 2468559, at *3 (M.D. Ala. June 17, 2008); White v. Osmose, Inc., 204 F. Supp.2d 1309, 1318 n.9 (M.D. Ala. 2002). Thus, a cable installer may file a notice of consent to join this lawsuit in order to pursue a claim for an FLSA violation that occurred within three years prior to the filing of their consent to join. 29 U.S.C. § 256(b). The Court will allow Plaintiff to send a copy of the Notice to cable installers that worked for Defendants in Florida within the last three years prior to the date the Notice is mailed. See Gutescu v. Carey International, Inc., 2003 WL 25586749, at *17-18 (S.D. Fla. July 21, 2003)(concluding that the notice should reflect a three-year period from the date that the notice was sent, not from the date that the complaint was filed).

The Court wants to make clear, however, that it is not ruling that the alleged FLSA violations were willful and/or that a three-year limitations period is warranted. Instead, the

**C. Form of Proposed Notice to Class**

Defendants raise several objections to the proposed Notice. Accordingly, the Court will address each objection.

**1. Class Period**

In their proposed Court-authorized Notice, Plaintiff has used a three-year limitations period. Defendants contend that the relevant time period for class claims is two years, because a three-year period is only applicable if the FLSA violation is willful. 29 U.S.C. § 255(a). The Court rejects this argument.

Plaintiff has alleged in his complaint that Defendants willfully violated the FLSA. (Doc. No. 1, ¶ 117, 135). At this early stage of the proceedings, the Court concludes that Plaintiff's allegation is sufficient to support his request for a three-year period in the Court-authorized Notice. See Ohsann v. L.V. Stabler Hospital, 2008 WL 2468559, at *3 (M.D. Ala. June 17, 2008); White v. Osmose, Inc., 204 F. Supp.2d 1309, 1318 n.9 (M.D. Ala. 2002). Thus, a cable installer may file a notice of consent to join this lawsuit in order to pursue a claim for an FLSA violation that occurred within three years prior to the filing of their consent to join. 29 U.S.C. § 256(b). The Court will allow Plaintiff to send a copy of the Notice to cable installers that worked for Defendants in Florida within the last three years prior to the date the Notice is mailed. See Gutescu v. Carey International, Inc., 2003 WL 25586749, at *17-18 (S.D. Fla. July 21, 2003)(concluding that the notice should reflect a three-year period from the date that the notice was sent, not from the date that the complaint was filed).

The Court wants to make clear, however, that it is not ruling that the alleged FLSA violations were willful and/or that a three-year limitations period is warranted. Instead, the

Court is simply authorizing notice to class members that performed work for Defendants in Florida within the last three years. Defendants may raise its argument regarding the appropriate limitations period in a motion for decertification or a motion for summary judgment. See White, 204 F. Supp.2d at 1318 n.9.

### 2. Consent Forms

Next, Defendants argue that a self-addressed, stamped envelope should not be provided, nor should consent to join forms be accepted via fax or email. However, Defendants have failed to cite any case law to support their opposition. Upon consideration, the Court overrules this objection. See Vargas v. Richardson Trident Co., 2010 WL 730155, at *11 (S.D. Tx. Feb. 22, 2012); Valentine v. Harris County, 2003 WL 23741412, at *1 (S.D. Tx. Aug. 25, 2003); Clincy v. Galardi South Enterprises, Inc., 2010 WL 966639, at *5 (N.D. Ga. Mar. 12, 2010); Fortna v. QC Holdings, Inc., 2006 WL 2385303, at *11 (N.D. Ok. Aug. 17, 2006). The cost of providing the self-addressed, stamped envelopes shall be borne by Plaintiff.

### 3. Costs

Next, Defendants argue that the Notice should state that opt-in plaintiffs could be liable for paying costs in this case, pursuant to Federal Rule of Civil Procedure 54, as well as attorneys' fees, pursuant to an indemnification provision within their independent contractor agreements. The Court has a copy of an Independent Contractor Agreement ("ICA") that Defendants revised in August of 2013 that some of the potential opt-in plaintiffs may have signed. (Doc. No. 35-1). The 2013 ICA contains an indemnification provision that provides a basis for an award of attorneys' fees and costs against any plaintiffs that had signed this ICA if such plaintiffs are found to be independent contractors. See Dobbins v. Scriptfleet, Inc., 2012

WL 2282560 (M.D. Fla. June 18, 2012). Accordingly, the Court agrees that the Notice should include language stating: "If an opt-in plaintiff has signed an independent contractor agreement that contains an indemnity provision, and if such plaintiff is found to be an independent contractor, such opt-in plaintiff could be liable for Defendants' attorneys' fees and costs in this case." See Whitaker v. Kablelink Communications, LLC, 2013 WL 5919351 (M.D. Fla. Nov. 4, 2013).

### 4. Opt-in Period

Next, Defendants argue that a 60-day opt-in period is too long, and instead, the Notice should contain a 45-day opt-in period. The Court, however, concludes that a 60-day opt-in period is permissible and appropriate. See Vargas, 2010 WL 730155, at *11; Wajcman v. Hartman & Tyner, Inc., 2008 WL 203579, at *2 (S.D. Fla. Jan. 23, 2008). Therefore, the Court-authorized Notice may use a 60-day opt-in period, and when describing the opt-in period in the Notice, Plaintiff is directed to insert an actual date (60 days after the mailing date) in the Notice.

### 5. Exclusion of Certain Cable Installers

Next, Defendants argue that the Notice should exclude any potential opt-in plaintiff that has signed an independent contractor agreement that requires arbitration of FLSA claims and/or prohibits pursuing collective actions. This argument is related to Plaintiff's motion for miscellaneous relief (discussed below), on which the Court will be holding an evidentiary hearing. The Court defers ruling on this argument at this time and will address this argument during the hearing.

### III. Motion for Miscellaneous Relief

Plaintiff also filed a motion for miscellaneous relief, in which he alleges that Defendants

are improperly threatening and intimidating potential opt-in plaintiffs to waive their right to join in this collective action. Specifically, Plaintiff contends that on August 16, 2013 (a week after Plaintiff filed his motion for conditional certification), Defendants held a meeting with their current cable installers and explained that they were required to sign a new ICA or they could no longer perform work for Defendants. The ICA contained a mandatory arbitration provision that specifically applied to FLSA claims and a class/collective action waiver.

Plaintiff contends that Defendants' conduct is calculated for the sole purpose of intimidating potential class members and preventing them from pursuing their FLSA rights collectively in this action, which amounts to unlawful retaliation under § 15(a)(3) of the FLSA.[3] Section 15(a)(3) provides:

> [It is unlawful] to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding . . . .

29 U.S.C. § 215(a)(3).

Defendants contest Plaintiff's characterization of the events in this case, arguing that the revised ICA that cable installers were asked to sign had been in the works for eighteen months and that no cable installer has been penalized for failing to sign the new ICA.[4] Furthermore, Defendants emphasize their right to enter into arbitration agreements. While the Court acknowledges that parties are free to enter into arbitration agreements, the timing and

---

[3] Plaintiff also contends that Defendants' conduct violates § 8 of the National Labor Relations Act.

[4] However, Defendants state that they "reserve the right to not give assignments to independent contractors who do not sign the ICA." (Doc. No. 35, p. 14 n.5).

circumstances in this case surrounding the arbitration agreement cause the Court great concern. See Billingsley v. Citi Trends, Inc., 2013 WL 2350163 (N.D. Ala. May 29, 2013)(concluding that mandatory arbitration agreements that store managers were required to execute during the pendency of FLSA collective action were unconscionable and would not be enforced).

The issue of the circumstances that must be present before a court can limit communications of a party with potential class members was addressed by the Supreme Court in Gulf Oil Company v. Bernard, 452 U.S. 89 (1981). The Gulf Oil Court stated:

> [A]n order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties. Only such a determination can ensure that the court is furthering, rather than hindering, the policies embodied in the Federal Rules of Civil Procedure, especially Rule 23. In addition, such a weighing–identifying the potential abuses being addressed–should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances.

Id. at 101-02. After Gulf Oil, the following framework is applied:

> [C]ourts have routinely recognized that the moving party must present an evidentiary showing of actual or threatened abuse by the party sought to be restrained. Two kinds of proof are required. First, the movant must show that a particular form of communication has occurred or is threatened to occur. Second, the movant must show that the particular form of communication at issue is abusive in that it threatens the proper functioning of the litigation.

Cox Nuclear Medicine v. Gold Cup Coffee Services, Inc., 214 F.R.D. 696, 697-98 (S.D. Ala. 2003). Under this framework, the Court will hold an evidentiary hearing to further address this motion.

### IV. Conclusion

Accordingly, it is ORDERED AND ADJUDGED that:

(1) Plaintiff's Motion for Conditional Certification and Facilitation of Court-Authorized Notice (Doc. No. 21) is **GRANTED** to the extent that the Court conditionally certifies a putative class of cable installers that: (1) performed work for Defendants in Florida within the last three years, (2) were classified as independent contractors, and (3) were not paid proper minimum wages and/or overtime wages.

(2) By November 20, 2014, Defendants are directed to produce to Plaintiff's counsel, in an electronic readable format, a list containing the full names, last known addresses, telephone numbers, and e-mail addresses of putative class members who worked for Defendants between November 2010 and the present.

(3) By November 15, 2013, Plaintiff's counsel is directed to email a copy of the proposed Notices in Word or Word Perfect format to chambers_flmd_bucklew@flmd.uscourts.gov so that the Court may edit them.

(4) The Court will hold an evidentiary hearing on Plaintiff's motion for miscellaneous relief on ***Thursday, November 21, 2013 at 9:00 a.m.*** before the Honorable Susan C. Bucklew in Courtroom 17 of the Sam M. Gibbons U.S. Courthouse, located at 801 North Florida Avenue, Tampa, Florida 33602.  At the hearing, the Court will also address and finalize the form of the Notices to be sent to potential opt-in plaintiffs.

(5) After the Court finalizes the Notices:

    (a) Plaintiff may send initial notice to all individuals whose names appear on the list produced by the Defendants' counsel by first-class mail.

    (b) Defendants are directed to post a copy of the Notice in all of its Cable Installations business locations and/or dispatch offices in Florida.

    (c) Plaintiff's counsel may send a follow-up notice to all individuals whose names appear on the list produced by Defendants' counsel but who, by the fourteenth day prior to the close of the Court-approved notice period, have yet to opt in to the instant action.

**DONE AND ORDERED** at Tampa, Florida, this 7th day of November, 2013.

*/s/ Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record