UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SHAKEEL ABDUL-RASHEED, on behalf
of himself and others similarly situated,

       Plaintiff,

v.                                                    Case No. 8:13-cv-879-T-24 MAP

KABLELINK COMMUNICATIONS, LLC
and KABLELINK COMMUNICATIONS
OF NORTH CAROLINA, LLC,

       Defendants.
_____/

**ORDER**

This cause comes before the Court on Plaintiff's Motion for Miscellaneous Relief Pursuant to § 215(a)(3) and for Corrective Notice (Doc. No. 34), which Defendants oppose (Doc. No. 35). The Court held an evidentiary hearing on this motion on November 21, 2013.

**I. Background**

On April 5, 2013, Plaintiff Shakeel Abdul-Rasheed filed suit against Defendants KableLink Communications, LLC ("KC-FL") and KableLink Communications of North Carolina, LLC ("KC-NC"). In his complaint (Doc. No. 1), Plaintiff alleges that Defendants KC-FL and KC-NC are joint employers, and that Defendants mis-classified him and other cable installers as independent contractors. As a result, Plaintiff alleges that Defendants violated the Fair Labor Standards Act's ("FLSA") minimum wage and overtime provisions.

On August 9, 2013, Plaintiff filed a motion for conditional certification and Court authorized notice. (Doc. No. 21). The Court granted the motion and conditionally certified a putative class of cable installers that: (1) performed work for Defendants in Florida within the

last three years, (2) were classified as independent contractors, and (3) were not paid proper minimum wages and/or overtime wages. (Doc. No. 44).

## II. Motion for Miscellaneous Relief

While the conditional certification motion was pending, Plaintiff filed a motion for miscellaneous relief, in which he alleges that Defendants are improperly threatening and intimidating potential opt-in plaintiffs to waive their right to join in this collective action. Specifically, Plaintiff contends that on August 16, 2013 (a week after Plaintiff filed his motion for conditional certification), Defendants held a meeting with their current cable installers and explained that they were required to sign a new independent contractor agreement ("ICA") within 30 days or they could no longer perform work for Defendants. The new ICA ("2013 ICA") contained a mandatory arbitration provision that specifically applied to FLSA claims and a class/collective action waiver. The arbitration provision provides the following, in pertinent part:

> (a) The parties agree that any claim or dispute arising out of, or related to, this Agreement . . . including any compensation claim, such as, a claim under the Fair Labor Standards Act . . . shall be settled by submitting such Claim(s) to . . . mandatory, binding arbitration.
> (b) The parties agree . . . each party . . . [will] bear their own costs, and attorney's fees . . . . [U]pon resolution of the arbitration, the non-prevailing party to the dispute . . . shall be responsible for the payment of 100% of the arbitrator's . . . fees . . . .
> (c) . . . [N]either party shall . . . participate as a member of a class or collective action. . . .

(Doc. No. 35-1).

Plaintiff contends that Defendants' conduct is calculated for the sole purpose of intimidating potential class members and preventing them from pursuing their FLSA rights

collectively in this action, which amounts to unlawful retaliation under § 15(a)(3) of the FLSA.

Section 15(a)(3) provides:

> [It is unlawful] to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding . . . .

29 U.S.C. § 215(a)(3).

Defendants contest Plaintiff's characterization of the events in this case, arguing that the 2013 ICA that cable installers were asked to sign had been in the works for eighteen months. Furthermore, Defendants emphasize their right to enter into arbitration agreements.

The Court held an evidentiary hearing on Plaintiff's motion in order to weigh the need to limit Defendants' communications against the potential interference with the rights of the parties. Thus, the parties were given the opportunity to present evidence regarding the following: (1) whether a particular form of communication had occurred or was threatened to occur, and (2) whether the particular form of communication at issue is abusive in that it threatens the proper functioning of the litigation.

Based on the evidence presented at the hearing, it is undisputed that on August 16, 2013, Defendants presented its cable installers with the 2013 ICA that contained a mandatory arbitration provision that specifically applied to FLSA claims and a collective action waiver.[1] The evidence is also undisputed that if the cable installers did not sign the 2013 ICA within 30 days, Defendants told them that Defendants would no longer give them any work. Thus, based

---

[1] None of Defendants' *employees* were asked to sign an arbitration agreement or to waive their right to proceed collectively.

3

on the evidence presented at the hearing, Plaintiff has established that the above described communication occurred.

Defendants attempted to provide evidence, through Defendants' Chief Operating Officer Bryan Wilson's testimony, that the 2013 ICA had been in the works for eighteen months, and as such, it was not created in response to the instant litigation. However, the Court found the testimony of Defendants' CEO, Tim Geske, to be more credible on this issue. Geske testified that the inclusion of the arbitration provision and collective action waiver was initiated in the third or fourth week of July 2013, in response to the Supreme Court's decision in American Express Company v. Italian Colors Restaurant, 133 S. Ct. 2304 (June 20, 2013).

In the American Express case, the Supreme Court concluded that a court cannot invalidate a class action waiver in an arbitration agreement on the ground that the cost to individually arbitrate the federal statutory claim exceeds the potential recovery. See id. at 2309-12. While this Court accepts that the American Express case may have been one of the triggering events that led to the creation of the 2013 ICA and the inclusion of the arbitration provision and collective action waiver, the Court concludes that the main triggering event was the fact that Defendants were currently facing a potential collective action at the time that the American Express opinion was issued.

Defense counsel acknowledged at the end of the hearing that if one looked solely at the timing of the presentation of the 2013 ICA to the cable installers in relation to the events in this lawsuit, one might conclude that the 2013 ICA was created in response to this lawsuit. As such, the Court expected that Defendants would provide some sort of documentary evidence to support defense counsel's argument that the 2013 ICA was in the works for eighteen months. The

testimony presented at the hearing on that issue was completely unconvincing. Instead, the Court concludes that the 2013 ICA was revised to include the arbitration provision and collective action waiver in response to this litigation; specifically, to discourage cable installers from opting into this lawsuit by threatening their continued relationship with Defendants. Essentially, cable installers were faced with the choice to: (1) sign the 2013 ICA and continue preforming work for Defendants, or (2) opt into this lawsuit and no longer perform work for Defendants. Based on the evidence presented at the hearing, the Court concludes that the 2013 ICA is unconscionable and that the arbitration provision and collective action waiver in the 2013 ICA is abusive in that it threatens the proper functioning of this litigation. See Billingsley v. Citi Trends, Inc., 2013 WL 2350163 (N.D. Ala. May 29, 2013)(concluding, under Georgia law, that mandatory arbitration agreements that store managers were required to execute during the pendency of FLSA collective action were unconscionable and would not be enforced).

By its terms, Florida law governs the 2013 ICA, and Florida recognizes unconscionability as a defense to the enforcement of a contract. See U.S. E.E.O.C. v. Taco Bell of America, 2007 WL 809660, at *1 (M.D. Fla. Mar. 15, 2007). The burden is on Plaintiff to show that the 2013 ICA is unconscionable. See id.; Sierra v. Isdell, 2009 WL 2179127, at *4 (M.D. Fla. July 21, 2009). Florida law requires "a showing of *both* procedural and substantive unconsionability." Pendergast v. Sprint Nextel Corp., 592 F.3d 1119, 1134 (11th Cir. 2010). As explained by one court:

> To determine whether a contract is procedurally unconscionable under Florida law, courts must look to: (1) the manner in which the contract was entered into; (2) the relative bargaining power of the parties and whether the complaining party had a meaningful choice at the time the contract was entered into; (3) whether the terms were merely presented on a "take-it-or-leave-it" basis; and (4) the

5

>complaining party's ability and opportunity to understand the disputed terms of the contract. Under Florida law, a central question in the procedural unconscionability analysis is whether the consumer has an absence of meaningful choice in whether to accept the contract terms.
>
> *   *   *
>
>Under Florida law, substantive unconscionability focuses on the terms of the agreement itself and whether the terms of the contract are unreasonable and unfair. Substantive unconscionability focuses directly on those terms of the contract itself which amount to an outrageous degree of unfairness to the same contracting party. Florida generally defines substantive unconscionability in reference to an agreement no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other.

Id. at 1135, 1139 (internal citations and quotation marks omitted). Substantive unconscionability can be found when the agreement at issue limits the available remedies. See Sierra, 2009 WL 2179127, at *4 (citation omitted).

As noted by the Eleventh Circuit, "there is some tension in Florida law regarding the analytical framework courts should use in evaluating both procedural and substantive unconscionability." Pendergast, 592 F.3d at 1134. Some courts use a balancing or sliding scale approach. See id. (citations omitted). Under the balancing framework, courts require a certain amount of procedural unconscionability and a certain amount of substantive unconscionability, but the amount of either can vary. See Romano v. Manor Care, Inc., 861 So. 2d 59, 62 (4th DCA 2004); Taco Bell, 2007 WL 809660, at *3. Thus, the more procedurally unconscionable the contract is, the less evidence of substantive unconscionability is required, although some substantive unconscionability must be present. See Romano, 861 So. 2d at 62 (citation omitted).

In this case, significant procedural unconscionability is present. The cable installers were presented with the 2013 ICA on a take-it-or-leave-it basis, and they had no bargaining power. If

they failed to sign the 2013 ICA, they were told they would no longer get work from Defendants. There was evidence that although the cable installers had 30 days to review the 2013 ICA, they were asked on a daily basis whether they had signed it yet. Finally, this Court has considered the context in which the 2013 ICA was presented—the cable installers were potential members of a collective action that had been pending for over four months. The cable installers were faced with the choice to: (1) sign the 2013 ICA and continue preforming work for Defendants, or (2) opt into this lawsuit and no longer perform work for Defendants. Defendants' employees, on the other hand, were not asked to execute an arbitration agreement or collective action waiver. Thus, the 2013 ICA was a device that targeted cable installers and was used to threaten them to waive their right to opt into this case.

Likewise, substantive unconscionability is present. As previously stated, substantive unconscionability can be found when the agreement at issue limits the available remedies. See Sierra, 2009 WL 2179127, at *4 (citation omitted). The 2013 ICA requires that each party pay their own attorney's fees, even for FLSA claims, despite the fact that the FLSA provides an award of attorney's fees to a prevailing plaintiff. 29 U.S.C. § 216(b). Such a provision in the 2013 ICA defeats the remedial purpose of the FLSA by limiting the remedies available.

Given the significant procedural unconscionability, as well as the substantive unconscionability, that is present in this case, the Court concludes that Plaintiff has met his burden of showing that the 2013 ICA is unconscionable and should not be enforced. As such, the arbitration provision and collective action waiver will not be enforceable with respect to cable installers that want to opt into this lawsuit. The Court will include language in the revised Notice (attached to this order) informing the cable installers of their right to opt into this case

even if they signed the 2013 ICA.

This Court is not implying that Defendants do not have the right to enter into arbitration agreements with their cable installers. To the extent that Defendants attempt to again revise their ICA (by addressing the attorney's fee issue) and make such ICA applicable to all claims that any cable installer has, or may have in the future, ***other than FLSA claims at issue in this case in which they are potential opt-in plaintiffs***, Defendants are free to do so. However, this Court will not condone Defendants' disguised attempt to force their cable installers to waive their right to opt into this currently pending collective action by threatening their income.

### III.  Notice to the Prospective Class

In the Court's prior order regarding conditional certification and at the evidentiary hearing, the Court also addressed the form of the proposed notice to the prospective class. Upon reflection, the Court realizes that it erroneously accepted Defendants' argument that the Notice should state that the opt-in plaintiffs could be liable for paying costs in this case, pursuant to Federal Rule of Civil Procedure 54, as well as attorneys' fees, pursuant to an indemnification provision within their ICAs. (Doc. No. 44). The Court's conclusion was based on the indemnification provision that is present in both the 2013 ICA, as well as the 2009 version of the ICA, which provides that the cable installers will indemnify Defendants "[t]o the fullest extent permitted by law," for attorneys' fees arising out of any claim relating to work performed under the ICA.[2] The Court stated in its conditional certification order "that the Notice should include language stating: 'If an opt-in plaintiff has signed an independent contractor agreement that contains an indemnity provision, and if such plaintiff is found to be an independent contractor,

---

[2]The 2009 version of the ICA was admitted into evidence at the evidentiary hearing.

such opt-in plaintiff could be liable for Defendants' attorneys' fees and costs in this case.'" (Doc. No. 44).

Upon reflection, the Court concludes that even if the cable installers are found to be independent contractors, they cannot automatically be held liable for Defendants' attorneys' fees incurred defending against their FLSA claims. As instruction 4.14 of the Eleventh Circuit pattern jury instructions for FLSA claims makes clear, proof of an employment relationship is an element of an FLSA claim. Therefore, if the cable installers fail to prove that they are Defendants' employees, then Defendants will be the prevailing party as to the FLSA claims. In such a situation, Defendants' entitlement to attorneys' fees is conditioned on a finding that the cable installers "conducted the litigation in 'bad faith, vexatiously, wantonly or for oppressive reasons.'" Murray v. Playmaker Services, LLC, 548 F. Supp.2d 1378, 1381 (S.D. Fla. 2008)(quoting Turlington v. Atlanta Gas Light Co., 135 F.3d 1428, 1437 (11th Cir. 1998)). To hold otherwise would impose a chilling effect that would defeat the remedial purpose of the FLSA. See Hernandez v. Colonial Grocers, Inc., 2013 WL 5762986, at *2 (Fla. 2d DCA Oct. 13, 2013)(concluding that an arbitration provision that provided for the prevailing party to be awarded attorneys' fees would allow a prevailing defendant to be awarded attorneys' fees for an unsuccessful FLSA claim, and the possibility of such an award created a chilling effect that defeated the remedial purpose of the FLSA).

Whether a person is an employee or an independent contractor is a threshold issue in many FLSA cases. If courts imposed an attorneys' fees award against unsuccessful independent contractors that have indemnity agreements, it would incentivize employers to mis-classify employees as independent contractors in an independent contractor agreement that contains an indemnity provision based on the hope that the possibility of an attorneys' fee award would

dissuade litigation on the issue.

Accordingly, the Court concludes that the Notice should not include language that opt-in plaintiffs could be liable for attorneys' fees, and the Court will delete such language from the revised Notice. Additionally, the Court will return the attorneys' fees language in the Notice back to its original form, which stated, "If there is no recovery or judgment in Plaintiffs' favor, you will not be responsible for any attorneys' fees." With respect to the cable installers' potential liability for costs, the Court concludes that a warning would undermine the FLSA's goal of encouraging full enforcement of statutory rights because the warning might dissuade people from joining the lawsuit. See Carrillo v. Schneider Logistics, Inc., 2012 WL 556309, at *14 (C.D. Cal. Jan. 31, 2012); Austin v. CUNA Mutual Ins. Society, 232 F.R.D. 601, 608 (W.D. Wis. 2006).

## IV.  Conclusion

Accordingly, it is ORDERED AND ADJUDGED that:

(1) Plaintiff's Motion for Miscellaneous Relief Pursuant to § 215(a)(3) and for Corrective Notice (Doc. No. 34) is **GRANTED**.

(2) The revised Notice attached to this order shall be used to provide notice to the potential class members:

    (a) Plaintiff may send initial notice first-class mail.

    (b) Defendants are directed to post a copy of the Notice in all of its cable installations business locations and/or dispatch offices in Florida.

    (c) Plaintiff's counsel may send a follow-up notice to all individuals who, by the fourteenth day prior to the close of the Court-approved notice period, have yet to opt in to the instant action.

      **DONE AND ORDERED** at Tampa, Florida, this 25th day of November, 2013.

Copies to:
Counsel of Record

SUSAN C. BUCKLEW
United States District Judge

11